IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 JUN 17  PM 3: 57

MARGARET BOTKINS,CLERK
CHEYENNE

CRAIG CUNNINGHAM,

       Plaintiff,

vs.

TECHNOLOGIC USA, INC.

       Defendant.

Case No.  19-CV-00231-F

---

## ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR DEFAULT JUDGMENT

---

This matter is before the Court on Plaintiff Craig Cunningham's motion (doc. 28) for default judgment against Defendant Technologic USA, Inc. ("Technologic").  For the following reasons, the Court grants in part and denies in part the motion. Plaintiff's motion for default judgment concerning the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b) is granted. Furthermore, Plaintiff's request for enhanced damages under that statute is granted in part. Plaintiff's motion as to his claim under 47 U.S.C. § 227(c) is granted. Additionally, Plaintiff's request for enhanced damages under that statute is granted in part.

I.      *Background*

Plaintiff, Craig Cunningham, is proceeding pro se in the present case.[1] The Court has previously recited the procedural background. Doc. 20. It suffices to say here that Plaintiff originally filed this action on June 27, 2019 in the Central District Court of California. Doc. 1 (complaint). He served the summons and complaint (and later a Second Amended Complaint), to Technologic pursuant to Rule 4 and state law. Docs 6-7.

After Technologic failed to timely answer or otherwise defend, on Plaintiff's request, the Clerk of the Central District of California entered default for Defendant on August 15, 2019. Doc. 9. After further procedures, on November 5, 2019, Judge Fernando M. Olguin held that the Central District of California lacked personal jurisdiction over Technologic and transferred the case to this Court. Doc. 17. Plaintiff filed a motion for default judgment with this Court on November 18, 2019. Doc. 19. On January 6, 2020, the Court entered an order denying Plaintiff's motion. Doc. 20. That order permitted Plaintiff to file a second amended complaint dismissing the Doe Defendants voluntarily or showing cause why they should not be dismissed without prejudice, addressing why and how the Technologic entity reflected in Plaintiff's evidence was the same or should be treated as the same as the Technologic that is a Defendant, and addressing whether the claim Plaintiff brought under the Texas Business and Commerce Code could be brought in an action outside the state of Texas.

---

[1] Plaintiff asserts he is proceeding pro se in the present case and does not assert he is a lawyer. The Court therefore holds Plaintiff's filings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Plaintiff timely filed a motion to amend his amended complaint and a motion to dismiss Doe Defendants on February 5, 2020. Docs. 21, 22. Plaintiff filed his amended complaint on February 6, 2020. Doc. 23. Chief Magistrate Judge Kelly H. Rankin granted Plaintiff's motion to amend his amended complaint the same day. Doc. 24. Because Plaintiff dropped John/Jane Does as defendants from the caption of his Second Amended Complaint, the Court terminated as moot Plaintiff's motion to dismiss the Doe defendants and terminated John/Jane Does (1-5) as parties to the case. Plaintiff also dropped his claim under the Texas Business and Commerce Code.

Plaintiff filed a notice of service of the Second Amended Complaint to Technologic on March 15, 2020 after leaving copies of it with the Wyoming Secretary of State. Doc. 25. On April 14, 2020, the Court ordered Plaintiff to either file a status report or an amended motion for default judgment by May 4, 2020. Doc. 26. Plaintiff timely filed his present motion for default judgment against Defendant on April 24, 2020. Doc. 28.[2] Technologic has not appeared.

II.     *Analysis*

A.     *Subject-Matter and Personal Jurisdiction*

In order for a court to have jurisdiction to enter a valid judgment, a court must have both personal and subject matter jurisdiction. *See* FED. R. CIV. P. 12(b). Specifically, a court must determine whether it has jurisdiction over a defendant who has not appeared before entering default judgment against the defaulting party. *Dennis Garberg & Assocs.,*

---

[2] Plaintiff also filed a motion for entry of default by the clerk, doc. 27, but this was unnecessary as default remained entered for Defendant in doc. 9.

*Inc. v. Pack-Tech Int'l Corp.,* 115 F.3d 767, 772 (10th Cir. 1997). In its order of January 6, 2020, the Court found it has subject-matter jurisdiction over Plaintiff's claims as well as general jurisdiction over Defendant.[3] The Court continues to have subject matter and personal jurisdiction.

B.    *Legal Standards for Default Judgment*

According to FED. R. CIV. P. 55(a), before obtaining a default judgment, the party seeking relief must show by affidavit or otherwise prove that the party against whom judgment is sought failed to plead or defend against the party's complaint. If the party meets these criteria, "the clerk must enter the party's default." *Id.* In the present case, as noted above, Defendant Technologic has been defaulted since August 15, 2019.

Once default is entered in accordance with Rule 55, the party is free to seek a default judgment. FED. R. CIV. P. 55(b). The clerk of the court is responsible for entering a default judgment. *Id.* The clerk must enter a default judgment "if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" in the amount verified by plaintiff as long as "defendant who has been defaulted for not appearing . . . is neither a minor nor an incompetent person." FED. R. CIV. P. 55(b)(1). If a party is unable to prove

---

[3] This Court previously found it has subject-matter jurisdiction over the present case on the basis that Plaintiff brings claims under 28 U.S.C. § 277 of the Telephone Consumer Protection Act, and the U.S. Supreme Court previously held in *Mims v. Arrow Fin'l Servs., LLC* that state and federal courts have concurrent jurisdiction over TCPA claims. *Mims v. Arrow Fin'l Servs., LLC,* 565 U.S. 368, 376 (2012). Furthermore, this Court previously found it has general jurisdiction over Defendant on the basis that Plaintiff alleges Wyoming is the place of incorporation for Technologic and binding precedent has ruled that "with respect to a corporation, the place of incorporation and principal place of business are paradig[m] ... bases for general jurisdiction." *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014). *See also BNSF Ry. Co. v. Tyrrell,* 137 S. Ct. 1549, 1558 (2017) (a corporation's place of incorporation is one of the paradigm forums in which it is 'at home' and thus subject to general jurisdiction, citing *Daimler*).

the certainty of the sum of their claim pursuant to Rule 55(b)(1), the party must file a motion with the court requesting a default judgment. FED. R. CIV. P. 55(b)(2). Furthermore, "the court may conduct hearings or make referrals…when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.* Nonetheless, "decisions to enter judgment by default are committed to the district court's sound discretion." *Dennis Garber & Associates, Inc. v. Pack-Tech Intern. Corp.,* 115 F.3d 767, 771 (10th Cir. 1997).

"[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.,* 770 F.2d 145, 148 (10th Cir. 1985) (citing *Venable v. Haislip,* 721 F.2d 297, 300 (10th Cir. 1983)). In the present case, Plaintiff's claims for money damages are based on 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5)(B). Doc. 23. Each of these statutes states that damages arising from violations of the TCPA should be awarded in the amount of plaintiff's actual monetary loss or $500 for each violation, whichever is greater. Plaintiff seeks only the statutory damages, not actual. Therefore, once the Court determines whether Plaintiff is entitled to relief on his claims, the amount claimed is capable of mathematical calculation: the statutory damages multiplied by the 198 violations that Plaintiff alleges. 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5)(B) also provide that damages can be enhanced up to treble damages in the Court's discretion if it is determined a violation was knowing or willful. Plaintiff claims Defendant knowingly and willfully violated TCPA provisions 198 times. Doc. 23.

Furthermore, "upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted." *Richfield Hosp., Inc. v. Shubh Hotels Detroit, LLC,* No. 10-CV-00526-PAB-MJW, 2011 WL 3799031 (D. Colo. Aug. 26, 2011); *see Olcott v. Delaware Flood Co.,* 327 F.3d 1115, 1125 (10th Cir. 2003). In the present case, by entering default for Defendant, Plaintiff's factual allegations are deemed admitted by Defendant. Therefore, Plaintiff's factual allegations contained in the complaint must be accepted as true.

The general rule states that when a plaintiff asserts multiple defendants are jointly liable, a default judgment should not be entered against a single defendant unless the plaintiff's claims against all defendants have been adjudicated or each defendant has defaulted. *See Hunt,* 770 F.2d at 148. In the present case, because Plaintiff has dropped the five John/Jane Does, the Court can enter default judgment against Technologic if otherwise appropriate.

C.      *Plaintiff's Claim Under 47 U.S.C. § 227(b)*

Plaintiff pleads two claims for relief under the TCPA. First, the plaintiff alleges the violation of 47 U.S.C. § 227(b)(1)(A)(iii). This statute provides in relevant part:

> **(b) Restrictions on use of automated telephone equipment**
> **(1) Prohibitions**
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> * * *
> **(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call,

unless such call is made solely to collect a debt owed to or guaranteed by the United States:

47 U.S.C.A. §227(b)(1)(A)(iii).

> 47 U.S.C. § 227(b)(1)(A)(iii), prohibits any person, absent the prior express consent of a telephone-call recipient, from "mak[ing] any call ... using any automatic telephone dialing system ... to any telephone number assigned to a paging service [or] cellular telephone service." A text message to a cellular telephone, it is undisputed, qualifies as a "call" within the compass of § 227(b)(1)(A)(iii). 768 F.3d 871, 874 (C.A.9 2014). For damages occasioned by conduct violating the TCPA, § 227(b)(3) authorizes a private right of action. A plaintiff successful in such an action may recover her "actual monetary loss" or $500 for each violation, "whichever is greater." Damages may be trebled if "the defendant willfully or knowingly violated" the Act.

*Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 666–67 (2016), *as revised* (Feb. 9, 2016).

In order to bring a successful TCPA claim under § 227(b)(1)(A)(iii), the plaintiff must show 1) the defendant made a call for non-emergency purposes, without the prior express consent of the person receiving the call, "using any automatic telephone dialing system or an artificial or prerecorded voice" and 2) that the call was made to a telephone number "assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F. Supp. 2d 1316, 1320 (D. Wyo. 2011).

In the present case, Plaintiff claims he has received at least 198 calls, not related to an emergency purpose and without his consent, to his cell phones, including three cell-phone numbers identified in his pleading. Doc. 23, Second Amended Complaint, Ex. A. The calls occurred throughout 2015 and 2016. Furthermore, Plaintiff alleges that each of the 198 calls were initiated using an automated telephone dialing system and prerecorded

message. In his Second Amended Complaint, Plaintiff also alleges facts to support that the Defendant Technologic is the same Technologic entity referenced in the call log (which refers to Technologic as an LLC) and other evidence Plaintiff has submitted in the record. Therefore, the Court finds Plaintiff has successfully established the necessary elements of a TCPA claim under § 227(b)(1)(A)(iii) and is entitled to statutory damages against Defendant for $500 per 198 calls: $99,000. 47 U.S.C.A. § 227(b)(3)(B).

Furthermore, Plaintiff asserts Defendant's "willful and knowing" violations of § 227(b)(1)(A)(iii) enable him to collect treble damages pursuant to § 227(b)(3) in the amount of $1500 per violation. Specifically, the statute provides:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C.A. § 227(b)(3).

In order to receive treble damages for a TCPA claim, it is not necessary for plaintiff to establish defendant had knowledge of the TCPA provision in order to prove a knowing or willful violation. *Lee v. Loandepot.com, LLC*, No. 14-cv-01084-EFM, 2016 WL 4382786, at *8 (D. Kan. Aug. 17, 2016). Instead, "to establish a *knowing* violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of the law." *Id.* (quoting *Steward v. Regent Mgmt. Solns.*, No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018, at *7 (N.D. Ga. May 4, 2011). In the present case, Plaintiff states he has repeatedly sued multiple customers

of Technologic including Michael Montes, owner of Tollfreezone.com, a telemarketer that uses Defendant to place calls. Doc. 23. The three such cases Plaintiff identifies in the Second Amended Complaint were filed respectively in 2014, 2015 and 2016. Plaintiff further contends Montes previously stated under oath that people who file lawsuits against Defendant's customers are added to the "Militant DNC list" maintained by Technologic *Id*.[4] Nonetheless, Plaintiff claims that calls from Defendant continued. *Id*. The calls on his Exhibit A call log date throughout 2015 and 2016. He also alleges that "[t]he entity technologic USA, Inc. was intentionally designed as a 100% illegal dialing platform for non-compliant telemarketers to make untraceable calls by the millions of calls each day." ECF No. 23 ¶ 24. He alleges Technologic made the calls with spoofed caller IDs and played prerecorded messages followed by 3-4 seconds of "dead air" before he was connected to a representative (indicative of the calls having been placed with automatic dialing systems).

Plaintiff's allegations show Defendant continued to place autodialed calls to Plaintiff despite clear evidence Plaintiff did not consent to them. Furthermore, Plaintiff's apparent placement on the "Militant DNC list" and continued receipt of automated calls from Technologic supports that Defendant knowingly and willfully acted in a manner that violated § 227(b)(1)(A)(iii). Therefore, it is concluded that Defendant acted knowingly or

---

[4] Plaintiff sued Michael Montes, owner of Tollfreezone.com, in a previous case. *Cunningham v. Michael Montes*, No. 16-cv-761-jdp, 2017 U.S. Dist. LEXIS 26804 (W.D. Wis. Feb. 27, 2017). In a deposition taken by Plaintiff in *Cunningham v. Michael Montes*, Montes states that "people who threaten lawsuits or actually file lawsuits: are added to the "Militant DNC list" which is maintained by Technologic. Doc. 23, Second Amended Complaint, ¶43. This is among the voluminous evidence (both depositions and documents) that Plaintiff attaches to the Second Amended Complaint to establish that the Defendant is the entity that caused the 198 calls to his cell phones.

willfully for the purposes of satisfying § 227(b)(3). Plaintiff is entitled to enhanced damages for each of Defendant's 198 TCPA violations.

The Court has discretion to determine the level of enhancement up to treble damages. In this case, the Court finds that in the circumstances of a default judgment, where – as will be discussed in the next section – Plaintiff is also entitled to statutory and enhanced damages for the same calls under § 227(c), the appropriate level of enhancement is double the statutory damages to which Plaintiff is entitled under § 227(b). Thus, Plaintiff is entitled to a total of $198,000 in damages on Claim 1.

D.    *Plaintiff's Claim Under 47 U.S.C. § 227(c) for Failure to Comply with 47 C.F.R. 64.1200*

Plaintiff brings a second claim for relief contending that in making each of the same 198 calls, Defendant also violated 47 U.S.C. § 227(c) by failing to comply with the Federal Communications Commission ("FCC")'s regulation 47 C.F.R. 64.1200(d) implemented thereunder. This regulation in relevant part states "no person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. 64.1200(d). The regulation specifies four minimum standards, three of which are relevant to Plaintiff's claim:

> (1) Written policy. Persons or entities making calls for telemarketing purposes much have a written policy, available upon demand, for maintaining a do-not-call list.
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

\* \* \*

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. ...

47 C.F.R. 64.1200(d)(1), (2), (4).

In order to violate 47 C.F.R. 64.1200(d), a defendant must initiate a call for telemarketing purposes to a "residential telephone subscriber." This term does not appear to be defined in Title 47 of the U.S. Code. It also does not appear that the FCC has promulgated a regulation to expressly define it. The question for Plaintiff's claim is whether a "residential telephone subscriber" includes a cellular phone subscriber who uses their cellular phone in their residence, despite the TCPA being promulgated in 1991, before cell phones became ubiquitous. As the Western District of Kentucky recently pointed out,

> Forty-seven C.F.R. § 64.1200(e) provides that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" ... In the referenced report and order, the FCC made clear that "residential subscriber" can include "wireless subscribers" because "it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." See *Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C. Rcd. at 14038-39; [*In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991,* 18 F.C.C. Rcd. 14014 (2003)] ... The FCC ... expressly rejected interpreting "residential subscribers" narrowly to exclude cellular telephone numbers categorically. See ... [*Id.*] at 14038 ... Cellular telephones can be used for residential purposes. ... A cellular telephone can satisfy the "residential telephone subscriber" element of § 64.1200(c) & (d). See 47 C.F.R. § 64.1200(e) ... A plaintiff, however, must put forth evidence establishing that her cellular telephone is used for residential purposes.

11

*Stevens-Bratton v. TruGreen, Inc.,* No. 2:15-2472, 2020 WL 556405, at *4 (W.D. Tenn. Feb. 4, 2020). The FCC's interpretation of § 227(c)'s ambiguous term "residential telephone subscriber" (or at times "residential subscriber") is not unreasonable, and the Court defers to it under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). Thus, for purposes of 47 C.F.R. 64.1200, a "residential telephone subscriber" includes a person who uses their cell phone as their home phone.

In this case, Plaintiff alleges that he has used his cellular phone(s) as his residential phone for at least 10 years. He has not had a wireline or landline phone in his home during that time period. Plaintiff therefore satisfies the residential telephone subscriber element. Because Technologic is defaulted, the Court considers it to have admitted Plaintiff's allegations that Technologic called Plaintiff's residential telephone number, more than twice in a 12 month period, for the purpose of telemarketing solicitation, without maintaining any of the required procedures of 47 CFR 64.1200(d)(1), (2), or (4). Plaintiff cites his current complaint at 24, 26-28, and Ex. G. More specifically, Plaintiff alleges the calls regarded all manner of telemarketing, including "get rich quick" and other fraudulent schemes. He further alleges that each and every telemarketer with whom he spoke on these calls failed to properly identify themselves and the parties they were calling on behalf.

Plaintiff further asserts that his second claim for relief does not seek impermissible double compensation on the calls.[5] He cites *inter alia Charvat v. NMP, Ltd. Liab. Co.,* 656

---

[5] Plaintiff's motion – which appears to be largely recycled from a case within the Ninth Circuit – argues the same 198 calls at issue also support separate recovery of statutory damages under 47 U.S.C. § 227(b)(1)(B) as calls using a prerecorded or artificial voice to a residential telephone line. Although the body of the Second Amended Complaint recites the language of subsection (b)(1)(B),

F.3d 440, 447-49 (6th Cir. 2011). In *Charvat*, the Sixth Circuit analyzed the statutory structure of § 227(b) and § 227(c) – noting each subsection contains its own private right of action clause – and the focus of each subsection. Subsection (b) addresses the harm of autodialed calls; subsection (c) addresses telemarketing calls, regardless of whether they are autodialed or not. The court found the statute provides for recovery of separate statutory damages on the same calls, assuming the calls meet the criteria of both subsections. It appears the Tenth Circuit has not ruled on this issue (or at least, Plaintiff does not cite such a case and the Court has not located one), but the Eleventh Circuit cites *Charvat* with approval on this issue. *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1106 (11th Cir. 2015). The Court finds *Charvat* persuasive.

Plaintiff's well-pled factual allegations entitle him to relief under § 227(c)(5) for Technologic's violations of 47 C.F.R. 64.1200(d). He is entitled to $500 for each of the 198 calls, $99,000. Section 227(c)(5) also has the same language as § 227(b) regarding willful and knowing violations are subject to up to treble statutory damages. Plaintiff seeks treble damages under this statute in the Second Amended Complaint. Plaintiff alleges Defendant uses "a stealth telemarketing platform purpose built and designed to facilitate illegal telemarketing calls." Doc. 23. This allegation shows that Defendant's platform is designed to be undetectable and it is a reasonable inference that one reason to avoid detection is to avoid compliance with 47 C.F.R. 64.1200(d)'s regulations. Therefore, the Court concludes that Defendant acted knowingly or willfully under § 227(c)(5). Plaintiff

---

Plaintiff does not bring a claim for relief under § 227(b)(1)(B). "A default judgment must not differ in kind from ... what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

13

is therefore entitled to enhanced damages on this claim as well.  Once again, the Court has discretion to determine the level of enhancement up to treble damages. The Court finds that in the circumstances of a default judgment where Plaintiff is also entitled to statutory and enhanced damages for the same calls under § 227(b), the appropriate level of enhancement is double the statutory damages to which Plaintiff is entitled under § 227(c). Plaintiff is therefore entitled to a total of $198,000 in damages on Claim 2.[6]

*III.    Conclusion*

For each of the reasons above, Plaintiff's motion for default judgment (doc. 28) is granted in part and denied in part. Plaintiff's motion for default judgment on his claim under 47 U.S.C. § 227(b) is granted. He is entitled to $99,000 in statutory damages on that claim; because the violations were knowing and willful, he is entitled to $198,000 on Claim 1. Furthermore, Plaintiff's motion for default judgment on his claim under 47 U.S.C. § 227(c) is also granted. He is entitled to $99,000 in statutory damages on this claim; because the violations were knowing and willful, he is entitled to $198,000 on Claim 2. Plaintiff is thus entitled to a total of $396,000 in damages.

---

[6] Because Plaintiff is pro se the Court liberally construes his filings.  Plaintiff's Second Amended Complaint and current motion for default judgment contain stray references to the Texas Business and Commerce Code § 305.053.  However, his current pleading dropped the third claim for relief in which he had previously attempted to bring a cause of action under the Texas statute.  Plaintiff's current filings contain numerous typographical errors, and the references to the Texas statute appear to simply be the inadvertent result of incomplete editing.  To the extent Plaintiff still sought relief under the Texas Business and Commerce Code § 305.053 the Court would deny the claim because as noted in the January 6, 2020 order, the statute limits its private right of action to "an action in this state," *i.e.,* in Texas.

Judgment shall enter accordingly. Plaintiff may submit a timely bill of costs pursuant to Rule 54(d).

IT IS SO ORDERED.

Dated this _17_ day of June, 2020.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE